## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **EKAETTE TOM AKWA** | ) | **Case No. 15-1550** |
| **Aka EKAETTE E. UKIH** | ) | (Proposed Lead Case for Consolidation) |
| **APPELLANT** | ) | **Chapter 13** |
| _____ | ) | |
| | ) | |
| **EKAETTE TOM AKWA** | ) | |
| **Aka EKAETTE E. UKIH** | ) | **Adv No. 14-00267** |
| **APPELLANT** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **RESIDENTIAL CREDIT SOL., INC** | ) | |
| | ) | |
| **APPELLEE** | ) | |
| _____ | )_ | |

## MOTION TO CONSOLIDATE APPEAL CASES PURSUANT TO UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT LOCAL RULE 28(a) AND TO DEFER BRIEFING FOR 60 DAYS

EKAETTE TOM AKWA (the "Appellant") by and through undersigned counsel John D. Burns, Esquire, and The Burns LawFirm LLC, hereby files this Motion to Consolidate or to Jointly Administer Appeal Cases with the United States Court of Appeals for the Fourth Circuit Pursuant to Local Rule 28(a) and To Defer Briefing for 60 Days (the "Motion"), and states as follows:

## FACTUAL STATEMENT:

On or about December 13, 2013 (the "Petition Date"), EKAETTE TOM AKWA (the "Appellant") filed a voluntary petition for Chapter 13 Bankruptcy.

The Appellant owns a property situated at 3100 Memory Lane, Silver Spring, MD 20904 (the "Property"). The Appellant scheduled the Property at $342,986.00 in the Schedules of Assets and Liabilities (the "Schedules") filed on January 8, 2014, pursuant to a market publication analysis obtained. [Dkt. 15]

The Appellant also scheduled Residential Credit Solutions, Inc. (the "Appellee") with a claim of about $440,579.44 in her schedules [Dkt. 15], which included a deficiency unsecured claim of $97,593.44 given the value of the Property. The Appellee filed a Proof of Claim (the "Claim") on January 24, 2014 for $476,535.97 [Cl. Dkt. 2]. Therein, as relevant hereto adjoined to the Claim is contained a promissory note in favor of American Home Mortgage executed by Ekaette E. Ukih for $453,000.00 (the "Note") [Cl. Dkt. 2-2], which accompanies an executed deed of trust by Ekaette E. Ukih (the "DOT") [Cl. Dkt. 2-2].

The Appellant filed a Complaint against the Appellee on May 7, 2014 wherein the Plaintiff requested the Bankruptcy Court bifurcate the Plaintiff's lien in a secured claim of $342,986.00 (representing the value of the Property) and an unsecured claim of $133,849.97 (the difference between the value of the Property

and the amount stated in the Claim by the Appellee) based on 11 U.S.C. §§ 1322(b)(2) and 506(a) [Adv. Dkt. 1] (the "Complaint").

The Appellee filed a Motion to Dismiss Complaint (the "Motion to Dismiss") on or about June 9, 2014 [Adv. Dkt. 5, 6]. The Appellee has contended that the Appellant's principal residence was the only collateral subject to the lien of the Appellee under the DOT, and that consequently a lien avoidance under 11 U.S.C. §§ 1322(b)(2) and 506(a) was unavailable to the Appellant. The Appellant filed a Response and Amended Response (collectively "The Responses") to the Motion to Dismiss on June 25, 2014 and July 8, 2014 respectively [Adv. Dkt. 7, 9]. The Appellant argued that there was alternative collateral in the nature of assigned items otherwise set forth in the DOT, among other arguments.

The Bankruptcy Court conducted a brief hearing on the Motion to Dismiss and Responses on July 10, 2014, at which counsel for the Appellant and counsel for the Appellee appeared. The Appellee argued that the Motion to Dismiss should be granted due to the rationale of *Nobelman v. American Saving Bank 508 U.S. 324 (1994) TR. Pp.4-5*. The Appellee further contended that the new enactments under 11 U.S.C. §§ 101(13A) and (27B) precluded arguments that incidental property would exclude the Note and DOT from modification under 11 U.S.C. § 1322(b)(2). *TR pp. 6-7.* The Appellee likewise contended that if Congress had meant to make

amendments which impacted the meaning of 11 U.S.C. § 1322(b)(2), it should have done so within the context of that provision. Furthermore, the Appellee reasoned that the arguments of the Appellant were contrary to the purpose of Section 1322(b)(2) which were proffered to be intended to keep the flow of mortgage monies intact. *TR pp. 16-17*. Lastly, the Appellee argued that no incidental property actually existed for the Appellant to assert as collateral, and thus the Complaint should be dismissed. *TR pp. 6-7.*

The Appellant's argument centered around the theory that supplemental collateral existed in the DOT, such as miscellaneous proceeds, and escrow funds, including the existence of an express assignment of the miscellaneous proceeds at ¶ 11 of the DOT. *TR pp. 7-8*. Secondly, the Appellant argued that when enacted in 2005, Sections 101 (13A) and (27B) of the Code did not mandate that real property was an element within their provisions. To the opposite, the plain words of these new provisions actually differentiate between real property and other collateral. What this meant is that under 11 U.S.C. § 1322(b)(2) the DOT could still be modified because real property was a required element within Sections 101(13A) and (27B) of the Code. For these propositions, the Appellant cited to the cases of *In re Ennis,* 558 F. 3d. 343 (4th Cir. 2009), and *In re Bradshe*r, 427 B.R 386 (Bankr. M.D.N.C. 2010). *TR pp.9-13*. Finally, the Appellant reasoned that any argument advanced by the

Appellee as to the applicability of *Nobelman, supra*, on incidental property was contradicted by the Third Circuit's review of the issue in *Hammond v. Commonwealth Mortgage Corporation of America* 27 F. 3d 52, 56 (3d Cir 1994), wherein the Third Circuit correctly observed that the issues of incidental property played no role whatsoever in the context of the Supreme Court's *Nobelman* decision.

On July 18, 2014, despite the Appellant's arguments set forth in the Motion to Dismiss, Responses, and oral argument, the Bankruptcy Court issued a Memorandum of Decision and Order Granting the Motion to Dismiss. [Adv. Dkt. 13, 14] A Notice of Appeal was timely filed in the Bankruptcy Court on July 24, 2014. [Adv. Dkt. 18]   The District Court affirmed and a timely notice of appeal was taken in this forum.

## **ARGUMENT**:

The Appellant contends that this case which is one of several on appeal to the United States Fourth Circuit involving the same issues of law and very similar factual settings.  The Appellant believes these cases should be briefed in tandem both for similarity of rulings by a single panel and for judicial economy.  The crux of this and the related cases is whether words mean what they say, and if so, whether the Court should assign said words their ordinary and customary meaning. In this issue, such words mean that if collateral other than real property is secured by the lender in

a deed of trust, even if the real property is the debtor's principal residence, the lender

has forfeited its anti-modification rights under 11 U.S.C. § 1322(b)(2). This section

provides in relevant part that the debtor may "modify the rights of holders of secured

claims, other than a claim secured ***only*** *by a security interest in real property that is*

*the debtor's principal residence*, or of holders of unsecured claims, or leave

unaffected the rights of holders of any class of claims." See, 11 U.S.C. §

1322(b)(2)(2011).

   The plain and ordinary meaning of the word "only" is "alone in a class

or category." *Webster-Merriam Dictionary Online* (2012). "[A] statute must, if

possible, be construed in such fashion that every word has some operative effect." *In*

*re Hicks*, 138 B.R. 505, 507 (Bankr. D. Md. 1992), *citing United States v. Nordic*

*Village*, 112 S.Ct. 1011, 1015 (1992); *United States v. Menasche*, 75 S.Ct. 513, 538-

39 (1955). The Supreme Court has recognized that any endeavor of statutory

interpretation should begin with the plain words of the statute. *See United States v.*

*Ron Pair Enterprises, Inc*., 109 S.Ct. 1026 (1989); *Landreth Timber Company v.*

*Landreth*, 105 S.Ct. 2297 (1985). "In this case, it is also where the inquiry should

end, for where, as here, the statute's language is plain, 'the sole function of the courts

is to enforce it according to its terms.'" *Hicks*, 138 B.R. at 507 (citations omitted). A

court is to examine statutory language first, and if unclear, then to look to legislative

history. *See, Toibb v. Radloff*, 501 U.S. 157, 111 S.Ct. 2197 (1991).

Similarly, the term "real property" should be afforded its restrictive and ordinary meaning; namely, "any land or improvements to land." *Supervisor of Assessments of Baltimore County v. Greater Baltimore Med. Ctr., Inc*., Md. App. Case. No. 2060 (Sept. Term 2009) (Dec. 1, 2011) (Reported)., p.10 citing to Black's Law Dictionary, p. 1218 (6th ed. 1990), ("defining real property as '[l]and and generally whatever is erected and growing upon and affixed to the land."). Moreover, improvements are "such things as are placed thereon by the way of betterments which are of a permanent nature and which add to the value of the property as real property including buildings and structures of every kind." *Allentown Plaza Assoc. v. Suburban Propane Gas Corp*., 43 Md. App. 337, 346 (1979).

The DOT at issue contains at least three areas of supplemental collateral, each of which has been assigned. For example, "*Miscellaneous Proceeds*" found at Definitions N within the DOT represent additional collateral and constitutes "*any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5)' for (i) damage to, or destruction, of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; (iv) or misrepresentations of, or omissions as to, the value and/ or condition of the*

*Property*." These Miscellaneous Proceeds are a source of repayment to Appellee at issue. *See* DOT § 2. *They are assigned to the Defendant as additional security and collateral*. *See* DOT § 11.

Moreover, the DOT calls for the Appellant to pay "Escrow Items" which in addition to the Property may be a source of repayment of the loan at issue. *See,* DOT § 3. Indeed, evidencing an intent that such monies be additional security the DOT recites that"[u]pon payment of all sums secured by this security instrument, Lender shall promptly refund to Borrower any Funds held by Lender." *See*, DOT § 3. If such Escrow Items were not collateral, they would not need be returned to the borrower once the loan is repaid. That is the very nature of a security interest and pledge as collateral.

Likewise, the DOT contains an assignment of insurance proceeds provision which constitutes additional security for the monies advanced. *See*, DOT § 5. Therein, the Appellee is named as an additional loss payee, and Appellee may "hold the policies and renewal certificates" and the Appellee may hold the insurance proceeds as well, and the proceeds are to be applied to the indebtedness as set forth in paragraph 2 of the DOT.

*Finally, it is evident that the intention of the Plaintiffs and Defendant at the time the DOT was entered into was that the Property itself only be the principal*

*residence of the Debtors for one year and two months following execution of the*

*DOT. See*, DOT § 6. Accordingly, the Property at issue was not contemplated by the

Appellee to be the principal residence of the Appellant after a year and two months.

It is a familiar maxim that "a statutory term is generally presumed to

have its common-law meaning." *Taylor v. United States*, 495 U.S 575, 592 (1990).

Similarly "where Congress borrows terms of art in which are accumulated in the

legal tradition and meaning of centuries of practice, it presumably knows and adopts

the cluster of ideas that were attached to each borrowed word in the body of learning

from which it was taken and the meaning its use will convey to the judicial mind

unless otherwise instructed." *Evans v. United States*, 504 U.S. 255, 260 (1992)

Accordingly, there is no reason that Congress should have been presumed to depart

from the long standing definitions of words such as "real property" in the enactment

of the BAPCPA, nor should Congress be presumed to have forgotten how to

reconcile newer statutory enactments with its older enactments, when joining them

for prospective interpretation. Where Congress enacts statutory amendments that

potentially intrude on traditional areas of state law jurisprudence (such as here,

matters as to what defines such incidental property), the "sole function of the courts

is to enforce the statute according to its terms." *See, Pennsylvania Department of*

*Public Welfare v. Davenport*, 495 U.S. 552, 564 (1990).

Under Maryland law, the Code, and the plain meaning of language, there can be no serious contention that miscellaneous proceeds, escrow funds or insurance proceeds are in the nature of '[l]and generally whatever is erected and growing upon and affixed to the land" and thus such other items are not real property. Accordingly, they are something other than real property and permit therefore lien modification under Section 1322(b)(2) of the Code.

In 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, and this revision to Title 11 contained Sections 101(13A) and (27B) of the Code. However, these revisions to Title 11 occurring in 2005 did not alter the foregoing analysis.

Specifically, Sections 101(13A) and (27B) serially provide:

> (13A) The term "debtor's principal residence"—
>
> (A) means a residential structure if used as the principal residence by the debtor, including incidental property, *without regard to whether that structure is attached to real property*; and
>
> (B) includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer if used as the principal residence by the debtor.

11 U.S.C. § 101(13A) (2013) (emphasis supplied)

> (27B) The term "incidental property" means, *with respect*

*to a debtor's principal residence—*

(A) property commonly conveyed with a principal residence in the area where the real property is located;

(B) all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and

(C) all replacements or additions.

11 U.S.C. § 101(27B) (2013) (emphasis supplied)

The definition of a "debtor's principal residence" includes "incidental property" "without regard to whether that structure is attached to real property." By operation of simple logic and the plain words themselves, the debtor's principal residence need not be real property. By further consequence, incidental property is not real property because it incorporates the definition of a "debtor's principal residence" and because it is "property commonly conveyed with a principal residence in an area where the real property is located." However, Section 1322(b)(2) as noted above requires the only collateral to be real property which is a debtor's principal residence.

It was this logic which compelled the United States Fourth Circuit Court of Appeals to opine that the enactments under BAPCPA issued in 2005 under 11 U.S.C. §101(13A) did not alter the requirement that real property be the only source

of collateral under 11 U.S.C. § 1123(b)(5). Section 1123(b)(5) applies in Chapter 11 and is identical for all intents and purposes to Section 1322(b)(2) of the Code.

"The prohibition against modification in §1322(b)(2) has two distinct requirements: first the security interest must be in real property, and second, the real property must be the debtor's principal residence. The definition of "debtor's principal residence" addresses only the second requirement, "leaving the explicit 'real property' [requirement] untouched." *In re Ennis*, 558 F.3d 343,345-346 (4th Cir. 2009), citing to *In re Herrin*, 376 B.R 316 (Bankr. D Ala.2007). As *Ennis* opined, a basic canon of statutory construction is to interpret statutory amendments by harmonizing them where possible and to interpret them if possible to afford meaning to every word. See *Ennis* 558 F.3d at 346. "[P]roperty interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979).

Numerous cases within the Fourth Circuit have followed this logic, and found that where an assignment of alternative collateral exists in a deed of trust other than real property, the lender will be subject to modification of its secured debt. See, eg; *In re Bradsher*, 427 B.R. 386 (Bankr.M.D.N.C., 2010) (finding that an actual assignment of an escrow account similar to assignment of miscellaneous proceeds in ¶ 11 in the DOT at issue on appeal permitted modification of a deed of trust); In *Bradshaw v. Asset Ventures, LLC* (*In re Bradshaw*) (13- 06176-8-RDD) (14-00023-

8-RDD) (Bankr. E.D.N.C., 6/4/2014) (separate assignment in funds again similar to ¶ 11 of the DOT at issue on appeal permitted modification of the deed of trust); *In re Murray*, (Case No. 10-10125-8-JRL, 2011 WL 5909638 at * 1) (Bankr. E.D.N.C. May 31, 2011) (Assignment of escrow funds similar to *Bradsher, supra*, sufficient to permit modification of deed of trust*); Accord, In re Martin*, 444 B.R. 538 (Bankr. M.D.N.C. 2011).

"If the examination of the loan documents reveals that such documents do provide for a security interest in addition to the security interest in the residence, then the claim is not secured solely by the debtor's residence and can be modified. The conclusion that a security interest can be modified under such circumstances does not depend upon the enforceability of the additional security interest or the availability or value of the additional collateral when the Chapter 13 case is filed." *See In re Hughes*, 333 B.R 360, 362 (Bankr. M.D.N.C. 2005). Other contexts have also highlighted the importance of separate collateral in determining that anti-modification provisions do not apply. *See Lomas Mort Inc v. Louis* 82 F.3d 1, 7 (1st Cir. 1996) (We hold that the anti-modification provision of §1322(b)(2) does not bar modification of a secured claim on a multi-unit property in which one of the units is the debtor's principal residence and the security interest extends to the other income producing units); *Accord, In re Scarborough*, 461 F.3d 406 (3d Cir. 2006). Finally,

because a mobile home is personal property as defined by North Carolina law a creditor's lien attached to other property than real property, and it was not entitled to the protection of the anti-modification provision of § 1322(b)(2). *In re Melara*, 441 B.R. 749 (Bankr.M.D.N.C., 2011).

In contrast, where the deed of trust simply recites the location of property and residence, **and** there is no language which could be construed as assignment of anything beyond the real property, bankruptcy courts have declined to permit modification. *See, eg; In re Mullins*, (Case No. 11-11176C-13G) (Adversary No. 11-2049) (Bankr.M.D.N.C. July 3, 2012); *In re Bynum*, (Case No. 12-10660; Adv. No. 12-2031) (Bankr. M.D.N.C. 2012).

Finally, Sections 101(13A) and (27B) of the Code have no impact on the supplemental collateral found within the DOT. For example, the definition of "Miscellaneous Proceeds" is far broader than the limited list of collateral found to be set forth as "incidental property" under Section 101(27B) of the Code. Accordingly, the DOT is modifiable and falls outside of the anti-modification provision of Title 11 herein.

Moreover, the Appellee argued at the hearing that miscellaneous proceeds should be ignored within the deed of trust because of high-browed economic policy, involving the flow of mortgage money into the markets.

Specifically the Appellee referenced Justice Stevens in his concurring opinion of *In re: Nobelman* stating that excluding supplemental collateral from a deed of trust to prevent modification of a loan would frustrate Congressional intent, which is to encourage the flow of capital into the home lending market.

This argument is factually incorrect. Firstly, there is nothing specifically and directly identified in the House Report or Senate Report accompanying 11 U.S.C. § 1322 which specifically recites any direct legislative purpose connecting modification rights and limitations to the flow of mortgage monies into the market. Secondly, although Congress has had multiple opportunities to modify Title 11 since 1983, including but not limited to the 1994 amendments, the 2005 overhaul and various other corrective legislation, at no time – ever - has Congress imposed a broader definition of "real property" from that arising under state law, despite having knowledge from the case law and disputes that this issue exists in the context of 11 U.S.C. § 1322(b)(2). In fact, Congress did just the opposite in 11 U.S.C. §§ 101(13A) and (27B) and actually chose to distinguish a "debtor's principal residence" and "incidental property" from real property. Finally, the plain language of the Code does not support a reading of any provision necessary to protect the flow of mortgage monies into the markets; rather, the language of Sections 1322(b)(2), 101(13A) and (27B) what they say.

Similarly, numerous Courts have rejected the idea that Section 1322(c)(2) of the Code only allows debtors to modify payments rather than claims: "To the contrary, the court agrees with cases finding that the application of § 1322(c)(2), which references § 1325(a)(5), allows for modification of an over secured short-term home mortgage claim including its interest rate." *In re Leola Terrell*, Case No. 99–70556–JTL (Bankr. M.D. Ga. Aug. 20, 1999) (holding that a market rate of interest is appropriate on claims modified pursuant to § 1322(c)(2)). *In re Paschen*, 99-42771-JTL, 2000 WL 33743100 (Bankr. M.D. Ga. Aug. 10, 2000) subsequently aff'd, 296 F.3d 1203 (11th Cir. 2002) *In re Eubanks*, 219 B.R. 468, 472-73 (B.A.P. 6th Cir. 1998). The Appellant at the case in hand has the ability to modify the Appellee's Claim because it is not only secured by the Debtor's principal residence.

The requirements at Maryland law for establishing a security interest either under Article 9 or by purchase installment agreement which is the essence of a mortgage are flexible and require only language of assignment or by words of retention of collateral pending release by the creditor. *See, eg; Tilghman Hardware, Inc. v. Larrimore,* 331 Md. 390 (Md. 1992)) to the proposition that under Article 9 of the U.C.C. a security agreement is created by specific language creating such a security interest, but is flexible as to context.

This test is easily met by the specific language under paragraph 11 of the DOT which states in relevant part "[a]ll miscellaneous proceeds are hereby assigned to and shall be paid to lender." This has the necessary and simple aspects of a security agreement which contains a security interest. What the Courts look to is the substance of the language and not the form of the agreement. *See generally, L and V Co. v. Asch*, 267 Md. 251, 257 (Md. 1972) (even a financing statement can serve as a security agreement if it contains required assignment language).

Likewise, there is an enforceable security interest in the escrow funds in that the Appellee holds a security interest in these funds under the DOT: "[u]pon payment of all sums secured by this security instrument, Lender shall promptly refund to Borrower any Funds held by Lender." See, DOT § 3. Finally, the nature of insurance proceed is similar in that the Appellee is named as an additional loss payee, and Appellee may "hold the policies and renewal certificates" and the Appellee may hold the insurance proceeds as well, and the proceeds are to be applied to the indebtedness as set forth in paragraph 2 of the DOT. See, DOT § 5.

Currently in the Fourth Circuit are pending the following cases: *Susan Donaldson v. M&T Bank* (Case No. 15-1781); *Gregory Birmingham v. PNC Bank, N.A.* (Case No. 15-1800); and *Abdella Abdosh v. Ocwen Loan Servicing, LLC* (Case No. 15-1891). There are two others which are on motion for direct certification to the

United States Fourth Circuit; namely, *In re Jeremy* and *In re Zewdie*, all involving similar or identical issues, as presented below. Those motions for direct certification should be granted shortly.

As noted, all cases present similar issues. The main issue in each pertains to the DOT regarding the property, and whether or not the first priority lien in these cases may be avoided on a principal residence due to the DOT containing arguably separate collateral in the nature of proceeds. This is pursuant to 11 U.S.C. §§ 101(13a), (27b), and 1322(b)(2). Furthermore, under 11 U.S.C. §§ 101(13a), (27b), and 1322(b)(2), all collateral in the DOT is exclusively real property which is the principal residence of the parties appellant.

The following cases are currently pending approval to be directly certified to the Fourth Circuit from the District Court: *Calvert L. Jeremy and Jolita M. Jeremy v. JP Chase Morgan, INC* (District Court Case No. 8:15-cv-01632-TDC); *Belayneh Zewdie v. PNC Bank, N.A.* (District Court Case No. 8:15-cv-02167-PJM); and *Stephen F. Paul and Carol Paul v. Suntrust Bank, INC* (District Court Case No. 8:15-cv-02168-PWG).

As it stands, these cases are currently pending decisions on their submitted Motions for Direct Certification, filed with the Fourth Circuit Court. However, these cases, with the exception of Jeremy, bear the same issues as the

aforementioned Fourth Circuit Cases. It is requested that once these three decisions arrive in the Fourth Circuit, they be enveloped in the joint administration that is being requested hereby.

Joint administration or consolidation of these cases will promote convenience and judicial economy. Convenience will be promoted by allowing the parties to engage in litigation at one given time, preventing the court from conducting multiple hearings for fairly identical cases, and from reviewing multiple briefs on the same issues rather than a consolidated or joint brief and joint consolidated appendix. Because of the similarity of their claims and their related factual allegations, the appellants anticipate similar appendices and briefing. Accordingly, Counsel requests an additional 60 days from the date of this here Motion to submit briefs in these foregoing cases and that the administration of the cases be jointly administered or consolidated procedurally.

Pursuant to United States Court of Appeals for the Fourth Circuit Local Rule 28(a), the Appellant so moves.

WHEREFORE, the Appellant, by undersigned counsel, respectfully requests that the Court enter an Order:

(i)     Granting the Motion; and

(ii)    Granting relief consistent with the foregoing; and

(iii)   Granting such other and further relief as equity and justice

may require.

Respectfully Submitted,
--------/S/ John D. Burns--------------

John D. Burns, Esquire (#22777)
The Burns LawFirm, LLC
6303 Ivy Lane; Suite 102
Greenbelt, Maryland 20770
(301) 441-8780
Counsel for the Appellant

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on this 31st day of August, 2015, a copy of the foregoing Debtors' Motion was served via first-class mail, postage prepaid, upon:

Office of the United States Trustee    (VIA MAIL)
6305 Ivy Lane; Suite 600
Greenbelt, MD 20770


Timothy Branigan        (VIA MAIL)
Chapter 13 Trustee
PO Box 1902
Laurel, MD 20725


Ekaette Tom Akwa        (VIA MAIL)
Aka Ekaette K. Ukih
3100 Memory Lane
Silver Spring, MD 20904


Christina M. Williamson, Esquire    (VIA ECF)
BWW Law Group LLC
4520 East West Highway Suite 200
Bethesda MD, 20814


          --------------/S/ John D. Burns--------------
          _____
          John D. Burns